( F. 2d )

R. D. MANUFACTURING CORPORATION *v.* THE UNITED STATES
(No. 5363, C.A.D. 997)

United States Court of Customs and Patent Appeals, November 5, 1970

*Eugene L. Stewart*, attorney of record, for appellant.
*William D. Rickelshaus*, Assistant Attorney General, *Alan S. Rosenthal, Thomas J. Press*, for the United States.

[Oral argument October 7, 1970 by Mr. Stewart and Mr. Press]

Before RICH, ALMOND, BALDWIN, LANE, *Associate Judges*, and McMANUS, *Judge*, sitting by designation.

LANE, *Judge*, delivered the opinion of the court:

This appeal is from the decision and judgment of the Customs Court, Second Division, 62 Cust. Ct. 421, 298 F. Supp. 1192, C.D.

3792 (1969), dismissing appellant's protest to the classification of certain merchandise described on the invoices as signatures. We reverse.

The merchandise in question consists of printed signatures which were subsequently combined with signatures of domestic origin and bound together to produce a complete volume of the Reader's Digest Condensed Book Club series. A signature comprises a number of folded sheets containing many printed pages. Such signatures may be cut, collated and bound to form a book.

The collector of customs classified the signatures as articles composed wholly or in chief value of paper lithographically printed, not specially provided for, not over 0.012 inch thick, under paragraph 1406 of the Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55816. Appellant asserts that the signatures are entitled to free entry under paragraph 1629(a) of the Tariff Act of 1930 as amended by T.D. 51908, as "publications issued for their subscribers or exchanges by scientific or literary associations or academies." Alternatively, appellant asserts that the signatures are dutiable under the provisions of paragraph 1410 of the Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55816, as unbound books not of foreign authorship.

Pertinent portions of the statutory provisions here involved read as follows:

Paragraph 1406 of the Tariff Act of 1930, as modified:

Pictures, calendars, cards, placards, and other articles (not including bands, decalcomanias, fashion magazines or periodicals, labels, flaps, or transparencies), composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material (except boxes, views of American scenery or objects, and music, and illustrations when forming part of a periodical or newspaper, or of bound or unbound books, accompanying the same), not specially provided for:
 Not over 0.012 inch thick_____ 13.5¢ per lb.

Paragraph 1629(a) of the Tariff Act of 1930, as amended:

Hydrographic charts and publications issued for their subscribers or exchanges by scientific or literary associations or academies, * * *. [Free]

Paragraph 1410 of the Tariff Act of 1930, as modified:

Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter; all the foregoing, not specially provided for:
 * * * * * * *
 Books (except diaries and music in books):
 Of bona fide foreign authorship * * *
 Other _____ 8% ad val.

The Customs Court held that the evidence produced by the importer failed to show that the Reader's Digest Condensed Book Club is a "literary association" within the meaning of the term as used in paragraph 1629 (a). The evidence shows that the club sells condensed books only to its members, that there is no fee in becoming a member of the club, that a free introductory volume is offered to obtain new members, that members do not hold any meetings and do not participate in the selections of the officers of the club, and that the club is a business enterprise operated to realize a profit. The court below found that the Reader's Digest Condensed Book Club and the appellant, R. D. Manufacturing Corporation, are divisions of the parent company, The Reader's Digest Association, Inc., the publisher of Reader's Digest Magazine, and that the Reader's Digest Condensed Book Club is a commercial enterprise whose aim is profit for its owner, The Reader's Digest Association, Inc.

In *Harvard University* v. *United States*, 8 Cust. Ct. 332, C.D. 632 (1942), relating to the classification of library cards, the Customs Court found that the library of the Harvard Chinese Institute of Harvard University was a scientific or literary association formed for the advancement of science or art. In *Frank J. Markwalter* v. *United States*, 44 Treas. Dec. 466, Abs. 46498 (1923), it was held that certain lithographic prints imported by the Rockefeller Institute were entitled to free entry under paragraph 1629 (a) since the prints were subsequently bound in publications and distributed to medical societies, scientists and hospitals. The appellant R D Manufacturing Corporation is not an organization similar to the Harvard Chinese Institute or to the Rockefeller Institute. The Reader's Digest Condensed Book Club is a business enterprise engaged in publishing and marketing books on a mail order basis for a profit and is a part of the general book trade of the country, and we conclude that as such it is not a literary association within the meaning of that term as used in paragraph 1629 (a).

The Customs Court also held that the imported signatures in this case were not "unbound books" as that term is used in paragraph 1410 of the Tariff Act of 1930 because the imported signatures included only one-fourth of the bound volume and did not contain the entire version of a condensation of a complete work.

The question is whether the imported unbound signatures must constitute a complete book when bound in order to qualify as an unbound book under paragraph 1410. In the early case of *MacMillan Co.* v. *United States*, 116 Fed. 1018 (S.D.N.Y. 1902), it was held that imported unbound printed sheets did not cease to be a book because some sixty-four pages of the bound book were printed in this country and added to the imported sheets at the beginning. In the present case,

the production manager of the Reader's Digest testified for the importer that signatures identical in form with the imported signatures are known as unbound books. The account operator of a large printing and binding business testified for the importer that printers, binders and customers refer to signatures as unbound books, and that a signature when bound by stitching is a book regardless of whether it is provided with hard or permanent covers. No evidence to the contrary was presented on behalf of the United States. We conclude that here the importer has shown that the imported signatures which became 25% of the bound volume were within the trade meaning of "unbound books" and hence were entitled to classification under paragraph 1410. We are led to this conclusion by examination of the evidence in this case, and we make no ruling as to the minimum amount of material needed to constitute an unbound book. We think the lower court's conclusion was contrary to the weight of the evidence. Accordingly, the judgment appealed is *reversed*.